IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DAVID LLOYD PEARSON,

                      Plaintiff,

        v.

CLACKAMAS COUNTY SHERIFF'S
DEPARTMENT *et al.*,

                  Defendants.

Case No. 3:24-cv-01017-SB

**OPINION AND ORDER**

---

**BECKERMAN, U.S. Magistrate Judge.**

       Plaintiff David Lloyd Pearson ("Pearson"), an adult in custody ("AIC") of the Idaho

Department of Corrections ("IDOC"), filed this action against the Clackamas County Sheriff's

Office, Clackamas County, the Clackamas County Jail, Clackamas County Sheriff Angela

Brandenburg ("Sheriff Brandenburg"), Clackamas County Sheriff's Deputy Troy Gilmore

("Gilmore"), an unknown Clackamas County Jail captain, unknown Clackamas County Jail

medical staff, and three unknown Clackamas County Sheriff's Office law enforcement officers

(together, "Defendants"), alleging constitutional claims under 42 U.S.C. § 1983 ("Section 1983")

and state law negligence claims.

*///*

PAGE 1 – OPINION AND ORDER

Now before the Court are Defendants' motions to dismiss Pearson's claims pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). (Defs.' Mot. Dismiss ("Defs.' Mot."), ECF No. 27; Defs.' Mot. Dismiss ("Med. Mot."), ECF No. 28.[1]) The Court has jurisdiction over Pearson's claims pursuant to 28 U.S.C. §§ 1331 and 1367, and all parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636. For the reasons discussed below, the Court grants in part and denies in part Defendants' motions to dismiss.

## BACKGROUND[2]

Pearson's claims relate to the injuries he allegedly suffered when Clackamas County Sheriff's Office deputies arrested him and the subsequent medical care he received for those injuries while in Clackamas County's custody. (*See generally* Am. Compl. ("FAC"), ECF No. 17.)

On December 21, 2023, Gilmore and two unnamed Clackamas County Sheriff's deputies confronted Pearson as he was leaving his employer's private driveway. (*Id.* at 8.) When Pearson saw the deputies, he turned his car around and drove back toward his employer's house, parked his car, and fled into a wooded area on foot. (*Id.* at 11.) The three deputies and a police canine pursued Pearson into the wooded area. (*Id.* at 10-11.) The canine found Pearson and bit him on his left thigh "sinking his teeth deep into the soft tissue [and] muscle, all the way to the bone[.]" (*Id.* at 10.) The three deputies arrived seconds later and restrained Pearson flat on his back. (*Id.*)

_____

[1] Pearson initially filed two separate cases but later requested that the Court dismiss the complaint in his related case, *Pearson v. Clackamas Cnty. Jail et al.*, No. 3:24-cv-01442-SB, and amended his complaint in this case to consolidate his claims and allow the parties to litigate in one case. (*See* Order, *Pearson v. Clackamas Cnty. Sheriff's Dep't et al.*, No. 3:24-cv-01017 (D. Or. filed Jan. 7, 2025), ECF No. 16.)

[2] "Except where otherwise stated, these facts are taken from [the plaintiff]'s complaint and are accepted as true." *Hebrard v. Nofziger*, 90 F.4th 1000, 1004 n.1 (9th Cir. 2024) (citing *Hoeft v. Tucson Unified Sch. Dist.*, 967 F.2d 1298, 1301 n.2 (9th Cir. 1992)).

Pearson did not resist the deputies' application of force, but the canine continued to "rip and tear at [Pearson's] upper thigh[.]" (*Id.*) The deputies allowed the canine to continue biting Pearson for "two to four minutes" while the deputies held him down. (*Id.*) The canine did not respond to its handler's verbal commands to release Pearson, and continued biting Pearson until one of the deputies slapped the dog in the face. (*Id.*)

The canine bite caused Pearson to suffer severe lacerations and severed nerves in his left thigh. (*Id.* at 5.) Pearson's injuries caused him to lose blood to the point that he was incapacitated and could not move. (*Id.*) A deputy applied a tourniquet to Pearson's injuries before loading him into an ambulance which rushed him to a trauma center for emergency surgery. (*Id.*)

On December 24, 2023, Pearson was discharged from the trauma center into the Clackamas County Sheriff's Office's custody. (*Id.* at 16.) Clackamas County Sheriff's deputies transported Pearson to the Clackamas County Jail. (*Id.*) Jail staff confiscated Pearson's pain medications and antibiotics that the doctors prescribed to him after his surgery. (*Id.* at 16-17.) After spending his first night in a holding cell, Pearson ultimately spent sixty-five days in a medical isolation cell with "unsanitary" conditions. (*Id.*) The jail's medical staff allegedly failed properly to care for Pearson's injuries, which subjected Pearson to pain, suffering, and infection, resulting in permanent injuries.[3] (*Id.* at 13.)

///

---

[3] To the extent that Pearson includes additional factual allegations in his responses to the pending motions, that information is not part of the current pleading and the Court will only consider that information should Pearson elect to include it in an amended complaint. *See Barnett v. E:Space Labs LLC*, No. 6:18-cv-00419-MC, 2018 WL 3364660, at *5 (D. Or. July 10, 2018) ("Plaintiff's Response asserts facts and allegations that are not found in her Amended Complaint. . . . On a Rule 12(b)(6) motion to dismiss, the scope of review is generally limited to the allegations in the complaint. . . . [T]he Court will not consider allegations outside the amended complaint.") (citation omitted), *appeal dismissed*, 2019 WL 549937 (9th Cir. Jan. 18, 2019).

Pearson alleges that he "cannot get up out of bed, out of a chair, off [his] knees, run, squat, go up stairs or many normal things without serious pain, a pain which never really goes away[.]" (*Id.*) Pearson also alleges that he suffers a "form of PTSD" from never receiving "access to [the] rec yard or a visit" and being housed next to AICs with mental health issues who consistently "scream[ed] obscenities [and] bang[e]d on doors." (*Id.* at 19.)

## DISCUSSION

## I.    LEGAL STANDARDS

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff's "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[4] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

///

---

[4] Defendants note that some of the defendants whom Pearson names in his excessive force claim appeared earlier by way of an Answer and Affirmative Defenses (ECF No. 9), and therefore "the Court should treat this motion as a motion for judgment on the pleadings, since pleadings have closed, pursuant to Rules 12(c) and 12(h)(2)." (Defs.' Mot. at 7 n.1.) The Court considers Defendants' motions relating to the defendants who have already appeared as a motion for judgment on the pleadings and analyzes Pearson's pleadings under the same standard. *See Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) ("Analysis under Rule 12(c) is substantially identical to analysis under Rule 12(b)(6) because, under both rules, a court must determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy.") (simplified); *see also Dworkin v. Hustler Mag. Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989) (noting that "[t]he principal difference between motions filed pursuant to Rule 12(b) and Rule 12(c) is the time of filing" and the motions are "functionally identical").

II.    PROPER DEFENDANTS

    A.    Municipal Defendants

Defendants move to dismiss Pearson's claims against the Clackamas County Sheriff's Office, the Clackamas County Jail, and "Clackamas County Medical" on the ground that those entities cannot be sued because they are not "persons" within the meaning of Section 1983. (*See* Defs.' Mot. at 4.)

    1.    Applicable Law

"[L]ocal governmental unit[s] or municipalit[ies] can be sued as a 'person' under section 1983." *Hervey v. Estes*, 65 F.3d 784, 791 (9th Cir. 1995) (quoting *Monell v. Dep't of Soc. Servs. of N.Y.C.*, 436 U.S. 658, 690 (1978)). "Other types of governmental entities can only be sued if they are intended to be separate and distinct legal entities." *Lukens v. Portland Police Bureau*, No. 3:11-cv-00827-MO, 2011 WL 5999376, at *2 (D. Or. Nov. 29, 2011) (dismissing the Portland Police Bureau as a defendant, with prejudice, from Section 1983 claims because the police bureau is not a distinct entity capable of being sued (citing *Hervey*, 65 F.3d at 792)).

Courts in this district have consistently dismissed federal and state claims against local law enforcement agencies because the plaintiffs should have filed against the city or county. *See, e.g.*, *Schoene v. Rasmussen*, No. 3:23-cv-01151-HZ, 2024 WL 2153589, at *8 (D. Or. May 14, 2024) ("[C]ourts in this district have held that local law enforcement agencies in Oregon were not intended to be separate and distinct legal entities and thus cannot be sued under § 1983." (citing *Harris v. City of Portland Police Dep't*, No. 3:15-cv-00853-HZ, 2016 WL 740425, at *5 (D. Or. Feb. 24, 2016))); *Dombroski v. City of Salem*, No. 6:09-cv-06284-TC, 2012 WL 1035719, at *3 (D. Or. Mar. 26, 2012) (dismissing all federal and state law claims against the Salem Police Department because "Oregon, along with many other jurisdictions, has held that any claim of liability against a police department must be brought against the city itself" (citing

*Keller v. City of Portland*, No. 3:98-cv-00263-ST, 1998 WL 1060222, at *3 (D. Or. Nov. 13, 1998)))).

### 2. Analysis

Pearson asserts claims against Clackamas County, the Clackamas County Sheriff's Office, the Clackamas County Jail, and "Clackamas County Medical[.]" (*See* FAC at 1-3, 14-15.) The Court finds that the proper defendant to those claims is Clackamas County. *See Schoene*, 2024 WL 2153589, at *8 ("[C]ourts in this district have held that local law enforcement agencies in Oregon were not intended to be separate and distinct legal entities and thus cannot be sued under § 1983."); *Barrera v. Multnomah Cnty. Inverness Jail*, No. 3:23-cv-00146-CL, 2023 WL 4239328, at *1 (D. Or. Feb. 9, 2023) ("Plaintiff cannot bring claims against 'Multnomah County Inverness Jail' because it is a county detention facility and not a 'person' capable of being sued under Section 1983.") (citations omitted), *findings and recommendation adopted*, 2023 WL 4235599 (D. Or. June 28, 2023). Accordingly, the Court dismisses the Clackamas County Sheriff's Office, the Clackamas County Jail, and "Clackamas County Medical[.]"

### B. Sheriff Brandenburg

Defendants move to dismiss Sheriff Brandenburg on the ground that Pearson's claims against her in her official capacity are redundant. (*See* Defs.' Mot. at 8.) Specifically, Defendants argue that a claim against Sheriff Brandenburg in her official capacity is effectively a claim against Clackamas County, and Pearson asserts identical claims against Clackamas County, making Sheriff Brandenburg's inclusion in this action redundant. (*See id.*)

The Court agrees that Pearson's separate claims against Clackamas County and Sheriff Brandenburg in her official capacity are redundant. *See Ctr. for Bio-Ethical Reform v. L.A. Cnty. Sheriff Dep't*, 533 F.3d 780, 799 (9th Cir. 2008) ("When both a municipal officer and a local government entity are named, and the officer is named only in an official capacity, the court may

dismiss the officer as a redundant defendant.") (citation omitted); *Wolfe v. City of Portland*, 566 F. Supp. 3d 1069, 1089-90 (D. Or. 2021) (dismissing claims against the mayor and police chief as redundant because the city was also named as a defendant (first citing *Ctr. for Bio-Ethical Reform*, 533 F.3d at 799; and then citing *Updike v. Clackamas County*, No. 3:15-cv-00723-SI, 2015 WL 7722410, at *4 (D. Or. Nov. 30, 2015)))).

It is not clear to the Court, however, that Pearson only asserts claims against Sheriff Brandenburg in her official capacity. (*Compare* FAC at 2, indicating on the original complaint for this action that Pearson named Sheriff Brandenburg in her official capacity *with id.* at 15, listing Sheriff Brandenburg as a defendant in Pearson's related case without indicating whether he is suing her in her individual or official capacity; *see also* Pl.'s Sur-Response Defs.' Mot. Dismiss ("Pl.'s Sur-reply") at 10-11, discussing Pearson's Fourth Amendment "Section 1983 claim against Defendant[s] in Individual Capacity" and arguing that Defendants are liable for their "[d]eliberate indifference from the top to actual illegal conduct at the bottom" and that "[n]o amount of words changes the facts of what happened and how responsibility goes right up the chain of command," ECF No. 42.) Accordingly, the Court grants Defendants' motion to dismiss Pearson's claims against Sheriff Brandenburg in her official capacity but denies Defendants' motion to dismiss Pearson's claims against Sheriff Brandenburg in her individual capacity on the ground that the claims against her are redundant.[5]

///

///

///

---

[5] For reasons discussed below, the Court finds that Pearson fails to state a claim upon which relief can be granted against Sheriff Brandenburg, but dismisses those claims without prejudice.

PAGE 7 – OPINION AND ORDER

### C.    Unnamed Defendants

Defendants move to dismiss the unnamed defendants on the ground that Pearson has

failed timely to file an amended complaint identifying the unnamed defendants in accordance

with the Court's scheduling order. (*See* Defs.' Mot. at 8-9.)

### 1.    Applicable Law

"As a general rule, the use of 'John Doe' to identify a defendant is not favored." *Gillespie*

*v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980) (citation omitted). "However, situations arise . . .

where the identity of alleged defendants will not be known prior to the filing of a complaint." *Id.*

"In such circumstances, the plaintiff should be given an opportunity through discovery to

identify the unknown defendants[.]" *Id.* (citation omitted). "To proceed against 'specific, but as-

yet unidentified defendants,' [the plaintiff] must 'otherwise state[ ] a valid claim.'" *Miller v. Fed.*

*Bureau of Investigation*, No. 3:24-cv-01224-SB, 2024 WL 4524865, at *7 n.1 (D. Or. Aug. 20,

2024) (quoting *Pastora by & through Toghraie v. County of San Bernardino*, No. 22-55617,

2023 WL 3734264, at *2 (9th Cir. May 31, 2023)).

### 2.    Analysis

For the reasons discussed below, the Court finds that Pearson has adequately alleged facts

supporting his claims against the deputies involved in his arrest.[6] Thus, the Court denies

---

[6] The Court also finds that good cause exists to modify the Court's scheduling order to
allow Pearson to substitute those unnamed defendants because Pearson has not had a reasonable
opportunity to conduct discovery. *See Hernandez v. Lord*, No. 3:19-cv-00151, 2021 WL
5042987, at *2 (D. Alaska Oct. 29, 2021) (finding good cause to extend the scheduling order
relating to a self-represented AIC-plaintiff's claims when doing so would result in "only
negligeable prejudice to [the defendant] . . . [, n]o dispositive decisions have been made in this
action, and discovery will resume"); *Narayan v. County of Sacramento*, No. 2:19-cv-00466,
2021 WL 4819441, at *5 (E.D. Cal. Oct. 15, 2021) ("[I]n light of plaintiff's pro se status, and to
ensure that plaintiff receives an equal opportunity to file a summary judgment motion if he
wishes, the court finds it appropriate to re-open discovery for a short time for the limited purpose
of permitting plaintiff to properly notice and conduct the desired depositions."), *findings and
recommendation adopted*, 2022 WL 718414 (E.D. Cal. Mar. 10, 2022). In light of the Court's

Defendants' motion to dismiss based on Pearson's failure timely to identify the unknown

Clackamas County Sheriff's deputies involved in his arrest. *See Pearce v. City of Portland*, No.

3:22-cv-00518-HZ, 2023 WL 315913, at *3 (D. Or. Jan. 18, 2023) ("At the pleading stage,

before fact discovery, Plaintiff need not name individual Defendants at all—the action would not

be dismissed if he had only named Doe Defendants. Thus, the Court declines to dismiss

Plaintiff's claims simply because he cannot identify which specific officer shot him."); *cf. Roe v.

City of Portland*, No. 3:22-cv-01193-SB, 2024 WL 3888705, at *7-8 (D. Or. Aug. 19, 2024)

(denying the defendants' motion to dismiss the plaintiff's otherwise time-barred Section 1983

claims against "John Does I to III" because "[the plaintiff]'s original complaint contains a

sufficient level of specificity to put John Does I to III on notice that they were [the plaintiff]'s

intended defendants").

  However, for reasons discussed below, the Court finds that Pearson fails to allege facts to

support a claim upon which relief can be granted against the unnamed Clackamas County Jail

captain and staff. The Court therefore dismisses Pearson's claims against these defendants

because Pearson fails to state a claim against them upon which relief can be granted. *See Miller*,

2024 WL 4524865, at *7 n.1 ("To proceed against 'specific, but as-yet unidentified defendants,'

[the plaintiff] must 'otherwise state[ ] a valid claim.'" (quoting *Pastora by & through Toghraie*,

2023 WL 3734264, at *2)).

**III.    FOURTH AMENDMENT**

  Pearson asserts a Section 1983 claim against Gilmore and two unknown Clackamas

County Sheriff's deputies, alleging that the three deputies violated Pearson's Fourth Amendment

---

leave to allow Pearson to amend his complaint, the Court will address a new case management
schedule once the pleadings are settled.

rights by using excessive force against him.[7] (*See* FAC at 3-5.) Defendants move to dismiss

Pearson's claim against Gilmore on the grounds that "[t]he Amended Complaint fails to allege

that Deputy Gilmore was an integral participant" in the alleged constitutional violation. (*Id.* at 7,

citing *Hughes v. Rodriguez*, 31 F.4th 1211, 1223 (9th Cir. 2022).)

### A.    Applicable Law

"A police officer's use of excessive force on a person [is] a seizure subject to the

[reasonableness requirement of the] Fourth Amendment." *Hyer v. City & Cnty. of Honolulu*, 118

F.4th 1044, 1060-61 (9th Cir. 2024) (citing *Graham v. Connor*, 490 U.S. 386, 388 (1989)); *see*

*also Williams v. City of Sparks*, 112 F.4th 635, 642 (9th Cir. 2024) (noting that "[a] police

officer's application of deadly force to restrain a subject's movements 'is a seizure subject to the

reasonableness requirement of the Fourth Amendment'" (quoting *Tennessee v. Garner*, 471 U.S.

1, 7 (1985))). "To state an excessive force claim, plaintiff must allege facts showing that the

officers' conduct was 'objectively [un]reasonable in light of the facts and circumstances

confronting them[.]'" *Mihailovici v. Snyder*, No. 3:15-cv-01675-KI, 2016 WL 447842, at \*4 (D.

Or. Feb. 4, 2016) (quoting *Graham*, 490 U.S. at 397).

---

[7] Pearson also appears to assert a supervisory excessive force claim against Sheriff
Brandenburg. (*See* FAC at 9, alleging that Sheriff Brandenburg is liable because "the chain of
command failed to enforce or review [office] policies, training and procedure both in text and
with the acting officer giving rise to this nearly deadly event and clearly excessive force"; Pl.'s
Sur-reply at 10-11, discussing Pearson's Fourth Amendment "Section 1983 claim against
Defendant[s] in Individual Capacity" and arguing that Defendants are liable for their
"[d]eliberate indifference from the top to actual illegal conduct at the bottom" and that "[n]o
amount of words changes the facts of what happened and how responsibility goes right up the
chain of command"). The Court finds that Pearson has failed to allege facts supporting that
Sheriff Brandenburg either personally participated in the alleged use of force or that there is "a
sufficient causal connection . . . 'between the supervisor's wrongful conduct and the
constitutional violation.'" *Felarca v. Birgeneau*, 891 F.3d 809, 820 (9th Cir. 2018) (quoting
*Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011)). Accordingly, the Court dismisses Pearson's
supervisory excessive force claim.

Mere presence at the scene is insufficient to support a Section 1983 claim. *See Bonivert v. City of Clarkston*, 883 F.3d 865, 879 (9th Cir. 2018) ("An officer can be held liable for a constitutional violation only when there is a showing of 'integral participation' . . . as opposed to mere presence at the scene." (quoting *Jones v. Williams*, 297 F.3d 930, 935-36 (9th Cir. 2002))). "Integral participation does not require that each officer's actions themselves rise to the level of a constitutional violation . . . [b]ut it does require some fundamental involvement in the conduct that allegedly caused the violation." *Blankenhorn v. City of Orange*, 485 F.3d 463, 481 n.12 (9th Cir. 2007) (simplified).

### B.    Analysis

Pearson does not appear to allege that the use of a canine alone constituted excessive force. (*See* FAC at 11, acknowledging that he attempted to elude arrest and alleging that "[t]he excessive force happened when the K-9 was allowed to continue ripping at my leg.") Rather, it appears that Pearson's excessive force allegations are specific to the time after the deputies restrained Pearson and allegedly allowed the canine to continue biting him. (*See id.* at 8, "[T]he time between the three officers holding me down and pulling the K-9 off me is in particular the excessive force this suit is about."; *id.* at 13, alleging that Pearson's excessive force claim relates to "[t]he time between being in custody by the fact I was held down by three law enforcement officers and the K-9 being forced by a slap in the face to let go").

Pearson alleges that when the deputies and canine found him, he was lying on his back. (*See id.* at 10.) Pearson alleges the canine confronted him first, and that the three deputies arrived approximately two seconds later and restrained Pearson's arms and torso. (*See id.*) Pearson did not resist. (*See id.*) Pearson alleges that the three deputies held him down on his back and allowed the canine "to rip and tear at [his] upper thigh" for approximately "two to four minutes." (*See id.*)

PAGE 11 – OPINION AND ORDER

The Court finds that Pearson's allegations that the three officers were each restraining him during and as a part of the alleged constitutional violation are sufficient at this stage to demonstrate integral participation. *See Boyd v. Benton County*, 374 F.3d 773, 780 (9th Cir. 2004) (finding each officer on the scene was an integral participant because they participated in the initial use of force, participated in the illegal search in some meaningful way, and were aware of and did not object to the use of force at issue); *cf. Blankenhorn*, 485 F.3d at 481 n.12 (affirming summary judgment for officers "who arrived on the scene after the arrest was completed, and . . . who at most provided crowd control, [but] did not participate in any integral way in the arrest").

Defendants cite *Hughes* and argue that Gilmore was not an integral participant in the alleged constitutional violation because Pearson "has not and cannot allege that Deputy Gilmore had any control of the canine who bit him." (Defs.' Mot. at 7.) In *Hughes*, the law enforcement officers surrounded a house where the plaintiff, who had escaped from jail and had a history of weapons charges, violent gang affiliation, and evading law enforcement, was known to be hiding. *See Hughes*, 31 F.4th at 1216-17. When the plaintiff did not respond to the officers' commands to exit the house, the officers released a police dog into the house that attacked the plaintiff. *See id.* The plaintiff in *Hughes* asserted excessive force claims against the four officers who were present when he was arrested alleging, *inter alia*, that the officers allowed a police dog to continue biting him after he was handcuffed. *See id.* at 1223.

The Ninth Circuit affirmed entry of summary judgment relating to the plaintiff's claims against the three officers who were not the police dog's handler. *Id.* The court explained that those three officers were not integral participants in the alleged constitutional violation because one of the officers was "on the other side of the home at the time," and the remaining two officers "cannot be held liable for fleeting acts which they did not commit, came without

warning, and could not have prevented." *Id.* The court's conclusion was supported by the evidence in the record that "no more than a single minute elapse[d] between the moment [the dog-handling o]fficer . . . release[d] the dog and the moment [the plaintiff] [wa]s taken into custody." *Id.* at 1217.

Hughes is distinguishable. Here, unlike in *Hughes*, Pearson alleges that all three officers were involved in restraining him. *Compare id.* at 1223 (finding that one of the officers was entitled to summary judgment because he was "on the other side of the home at the time") *with* (FAC at 4, "After being put in custody by three officers holding me down, the canine was allowed to continue ripping into my left upper thigh[.]") Further, in *Hughes*, the Ninth Circuit held that two of the officers could not be held liable for "fleeting acts" which all occurred within one minute and "which they did not commit, came without warning, and could not have prevented." *Hughes*, 31 F.4th at 1223. Here, in contrast, Pearson alleges that the deputies restrained him and "allowed [the canine] to continue [biting Pearson] while [he] was held down for approx[imately] two to four minutes[,]" and that "the officers closest to the [canine] had to slap the [canine] in the muzzle to make him/her release [his] leg." (FAC at 4, 10.)

Pearson's allegations support a reasonable inference that the alleged constitutional violation was not a result of fleeting acts which came without warning and which Gilmore could not have prevented. Thus, the Court finds that Pearson has adequately alleged that Gilmore integrally participated in the alleged constitutional violation. *See Chew v. Gates*, 27 F.3d 1432, 1446 (9th Cir. 1994) ("Although these defendants did not personally participate in the infliction of [the plaintiff]'s injury, they may be held individually liable if they 'cause[d]' him to be subjected to a constitutional deprivation.") (citations omitted); *Bogle v. Clackamas County*, No. 3:15-cv-00013-SI, 2017 WL 5490870, at *5 (D. Or. Nov. 15, 2017) ("[B]ecause Defendants . . .

jointly decided to use police canines to search for [the plaintiff] . . . they are all jointly responsible for the first canine bite."), *aff'd*, 745 F. App'x 31 (9th Cir. 2018).

Accordingly, the Court denies Defendants' motion to dismiss Pearson's Fourth Amendment claim against Gilmore.

## IV.    EIGHTH AMENDMENT

Pearson appears to assert two Eighth Amendment claims against unnamed "Clackamas County Medical [and] Jail Staff." (FAC at 15; *see* Pl.'s Resp. Mot. Dismiss ("Pl.'s Resp.") at 2, describing Pearson's claims as asserting two separate "Eighth Amendment violation . . . claim[s]" relating to "[t]he entrance and 24 hours in booking" and "[t]he infection of the wound," ECF No. 34.[8]) Defendants move to dismiss Pearson's claims, arguing that he fails to allege that the medical or jail staff engaged in any "deliberately indifferent conduct[.]" (Med. Mot. at 5-7.)

### A.    Applicable Law

"A public official's 'deliberate indifference to a prisoner's serious illness or injury' violates the Eighth Amendment ban against cruel punishment." *Clement v. Gomez*, 298 F.3d 898, 904 (9th Cir. 2002) (quoting *Estelle v. Gamble*, 429 U.S. 97, 105 (1976)). A plaintiff must establish that he was "confined under conditions posing a risk of 'objectively, sufficiently serious' harm and that the officials had a 'sufficiently culpable state of mind' in denying the proper medical care." *Id.* (citing *Wallis v. Baldwin*, 70 F.3d 1074, 1076 (9th Cir. 1995)). "Thus, there is both an objective and a subjective component to an actionable Eighth Amendment violation." *Id.*

---

[8] Defendants note in their reply that Pearson filed a response to each of the two motions to dismiss, but that "[t]he only difference between the two filings is that on the first page, ECF 33 identifies it as being in answer to 'Document 27' and ECF 34 identifies it as being in answer to 'Document 28.'" (Defs.' Reply Mot. Dismiss ("Med. Reply") at 1-2 n.1, ECF No. 36.) The Court agrees and for simplicity will only cite to ECF No. 34 as Pearson's response.

"To satisfy the objective prong, a plaintiff must 'show a serious medical need by demonstrating that failure to treat [the] prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain.'" *Maney v. Brown*, 516 F. Supp. 3d 1161, 1178 (D. Or. 2021) (quoting *Hopton v. Fresno Cnty. Hum. Health Sys.*, No. 1:20-cv-00141, 2020 WL 1028365, at *5 (E.D. Cal. Mar. 3, 2020)).

"The subjective component requires [AICs] to show that the officials had the culpable mental state, which is deliberate indifference to a substantial risk of serious harm." *Clement*, 298 F.3d at 904 (simplified). "Deliberate indifference" is established only when "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). "A prison official's duty under the Eighth Amendment is to ensure 'reasonable safety,'" and "prison officials who act reasonably cannot be found liable[.]" *Farmer*, 511 U.S. at 844-45 (quoting *Helling v. McKinney*, 509 U.S. 25, 33 (1993)). "Mere indifference, negligence, . . . medical malpractice[, or e]ven gross negligence is insufficient to establish deliberate indifference to serious medical needs." *Lemire v. Cal. Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1082 (9th Cir. 2013) (simplified); *Hamby v. Hammond*, 821 F.3d 1085, 1092 (9th Cir. 2016) ("A showing of medical malpractice or negligence is insufficient to establish a constitutional deprivation under the Eighth Amendment." (quoting *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004))).

///

///

///

///

B.    **Analysis**

1.    **Holding Cell**[9]

a.    **Objective Prong**

With respect to the objective prong, Pearson alleges that a day after emergency surgery to repair life threatening injuries, he was transferred to the Clackamas County Jail where he was held in unsanitary conditions, deprived of his prescribed pain medication, and denied attention to his bleeding wound. (*See* FAC at 16.) Pearson further alleges that his holding cell did not have toilet paper or blankets, he had to sleep on a "dirty old mattress," his injuries were not tended to, and the staff provided him "half eaten food[.]" (*See id.*) Defendants do not appear to dispute that Pearson's allegations satisfy the objective prong. Thus, the Court finds that Pearson has adequately alleged that his injury and medical needs were "sufficiently serious" to satisfy the objective prong of the Eighth Amendment analysis. *See Looman v. Wick*, 329 F. App'x 729, 730 (9th Cir. 2009) (finding that the plaintiff's allegations that "he was deprived of his pain medication for up to eight hours the day after he had hernia surgery" satisfied the objective prong of his Eighth Amendment claim).

b.    **Subjective Prong**

With respect to the subjective prong, Pearson fails to identify any individual or individuals that allegedly acted with deliberate indifference to his medical needs while he was in the holding cell. In his response, Pearson references an unnamed nurse who allegedly failed properly to examine him upon his arrival and "holding officers" who ignored his requests for blankets. (Pl.'s Resp. at 17-18.) The Court cannot consider Pearson's additional allegations that

---

[9] To the extent that Pearson asserts an Eighth Amendment claim based on his general conditions of confinement unrelated to his medical needs, the Court dismisses that claim for the same reasons discussed relating to his medical claims.

he only includes in his response. *See Barnett*, 2018 WL 3364660, at *5 ("Plaintiff's Response asserts facts and allegations that are not found in her Amended Complaint. . . . On a Rule 12(b)(6) motion to dismiss, the scope of review is generally limited to the allegations in the complaint. . . . [T]he Court will not consider allegations outside the amended complaint.") Further, even if it could consider the additional allegations in Pearson's response, the Court finds those allegations are vague and insufficient to state an Eighth Amendment claim against unnamed officers or medical staff. *See Kealoha v. Espinda*, No. 1:16-cv-00486, 2017 WL 741570, at *5 (D. Haw. Feb. 24, 2017) (explaining that "[i]f the names of individual defendants are unknown at the time a complaint is filed, . . . a plaintiff may refer to the unknown defendants as Defendant John Doe 1, John Doe 2, John Doe 3, and so on, but he must allege facts to support how each particular Doe defendant violated his constitutional rights," and holding that the self-represented plaintiff failed to state a claim because he "indiscriminately sue[d] Doe Defendants 1-200 without explaining their positions with [the relevant agency] or alleging how each individual violated his rights"); *Herrera v. Nguyen*, No. 1:12-cv-01915, 2013 WL 1364691, at *2 (E.D. Cal. Apr. 3, 2013) (dismissing the plaintiff's Eighth Amendment claim regarding his treatment for high blood pressure and explaining that "the Court finds Plaintiff's allegations to be vague" where the plaintiff "sets forth generalized allegations regarding his health care, and identifies [the defendant]" but did not "describe what each defendant . . . did to violate the particular right").

Accordingly, the Court dismisses Pearson's Eighth Amendment claim based on his twenty-four hours in the holding cell.

///

///

PAGE 17 – OPINION AND ORDER

2.    **Medical Isolation Cell**

a.    **Objective Prong**

With respect to the objective prong, Pearson alleges that for sixty-five days, Defendants held him in a medical isolation cell with unsanitary conditions, prevented him from accessing prescribed pain medication, and provided inadequate care from unqualified medical providers. (*See* FAC at 16-17.) Pearson further alleges that the inadequate medical care caused his wound to become infected, he "came within a few hours of losing [his] leg[,]" and his leg is permanently disfigured. (*Id.* at 18-19.) Defendants do not appear to dispute that Pearson's allegations satisfy the objective prong. Thus, the Court finds that Pearson has adequately alleged facts to satisfy the objective prong of the Eighth Amendment analysis. *Looman*, 329 F. App'x at 730 (finding that the plaintiff's allegations that "he was deprived of his pain medication for up to eight hours the day after he had hernia surgery" satisfied the objective prong of his Eighth Amendment claim); *Ahdom v. Lopez*, No. 1:09-cv-01874, 2010 WL 3001406, at *5 (E.D. Cal. July 29, 2010) (finding that the plaintiff's allegations that the defendants' failed to prescribe antibiotics after surgery which caused his injuries to become infected satisfied the objective prong of his Eighth Amendment claim).

b.    **Subjective Prong**

With respect to the subjective prong, Pearson primarily alleges that the Clackamas County Jail's medical staff members responsible for caring for his injuries were unqualified, failed properly to care for his injuries, and failed to use "sanitary procedures." (FAC at 17, "None of the people working on my leg had any recent wound care experience, one older woman had some [thirty] years ago. One of the other serious issues was the lack of sanitary procedures.") Pearson generally alleges that "[e]veryday a different person would change the bandages" and that "gloves were put on most of the time[.]" (*Id.*) Pearson alleges that he "would

observe the person [caring for his injuries] touching multiple areas, drawers, desk[s], [a] camera, even leaving the room and returning wearing the same gloves." (*Id.*) Pearson also alleges that on one occasion, an unnamed member of the medical staff "started taking off the bandages and unhook the wound vac[cum]" when "[s]he was not wearing gloves[,]" and that over "the next couple of days [Pearson's] wounds began to heat up and swell" with infection. (*Id.* at 18.) The medical staff allegedly responded by prescribing Pearson antibiotics which did not help and were later replaced or supplemented with "a second even stronger antibiotic." (*Id.*) Pearson appears to acknowledge that the second antibiotic was effective, and he avoided emergency surgery relating to his infection. (*See id.*, "They then quit feeding me preparing for emergency surgery. I came within a few hours of losing my leg.")

As described above, the Court finds that Pearson has failed to state a claim upon which relief can be granted because he does not identify any specific defendant's conduct that was allegedly deliberately indifferent to his medical needs. *See Lemire*, 726 F.3d at 1082 ("Mere indifference, negligence, . . . medical malpractice[, or e]ven gross negligence is insufficient to establish deliberate indifference to serious medical needs.") (simplified); *Hamby*, 821 F.3d at 1092 ("A showing of medical malpractice or negligence is insufficient to establish a constitutional deprivation under the Eighth Amendment."); *see also Kealoha*, 2017 WL 741570, at *5 (explaining that "[i]f the names of individual defendants are unknown at the time a complaint is filed, . . . a plaintiff may refer to the unknown defendants as Defendant John Doe 1, John Doe 2, John Doe 3, and so on, but he must allege facts to support how each particular Doe defendant violated his constitutional rights," and holding that the self-represented plaintiff failed to state a claim because he "indiscriminately sue[d] Doe Defendants 1-200 without explaining their positions with [the relevant agency] or alleging how each individual violated his rights").

PAGE 19 – OPINION AND ORDER

Accordingly, the Court dismisses Pearson's Eighth Amendment claim based on his time in the medical isolation cell.[10]

## V.    *MONELL* CLAIMS

Pearson appears to assert three *Monell* claims against Clackamas County: one claim for an alleged custom or policy of using excessive force "by [canine] bite" (Pl.'s Resp. at 6), and two claims for alleged policies relating to providing inadequate medical care. (*See generally* FAC at 14-20; Pl.'s Resp. at 2, describing Pearson's allegations as including a claim for "[t]he violation of [Pearson]'s [F]ourth [A]mendment right and the four elements of the Monell claim during the arrest" and two separate "Eighth Amendment violation and [M]onell claim[s]" relating to "[t]he entrance and 24 hours in booking" and "[t]he infection of the wound").

### A.    Applicable Law

To prevail on a *Monell* claim under Section 1983, a plaintiff must demonstrate that a municipal custom or policy caused the violation of a constitutional right. *See Monell*, 436 U.S. at 690 ("Local governing bodies . . . can be sued directly under [Section] 1983 . . . where, as here, the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers."). "[M]unicipalities may be liable under [Section] 1983 for constitutional injuries pursuant to (1) an official policy; (2) a pervasive practice or custom; (3) a failure to train, supervise, or discipline;

---

[10] To the extent Pearson asserts a supervisory claim based on the alleged Eighth Amendment violations, the Court dismisses those claims because Pearson has failed adequately to allege any facts supporting that the unnamed "captain" either personally participated in the constitutional violation, or there is "a sufficient causal connection . . . 'between the supervisor's wrongful conduct and the constitutional violation.'" *Felarca*, 891 F.3d at 820 (quoting *Starr*, 652 F.3d at 1207). Accordingly, the Court dismisses Pearson's supervisory Eighth Amendment claim.

or (4) a decision or act by a final policymaker." *Horton v. City of Santa Maria*, 915 F.3d 592, 602-03 (9th Cir. 2019).

To establish *Monell* liability, a plaintiff must demonstrate that: "(1) they were deprived of a constitutional right; (2) the municipality had a policy, custom, or practice; (3) the policy, custom, or practice amounted to deliberate indifference of the plaintiffs' constitutional rights; and (4) the policy, custom, or practice was the 'moving force' behind the constitutional violation." *Cantu v. City of Portland*, No. 3:19-cv-01606-SB, 2020 WL 2952972, at *3 (D. Or. June 3, 2020) (citing *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011)). "That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997).

"When inadequate training is the basis of a *Monell* claim, liability arises 'only where the failure to train amounts to deliberate indifference to the rights of persons with whom police come into contact.'" *Barror v. City of St. Helens*, No. 3:20-cv-00731-SB, 2023 WL 5350755, at *1 (D. Or. Aug. 18, 2023) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). "Deliberate indifference can be established in three ways[: f]irst, the municipality made 'a conscious or deliberate choice' not to train its officers by 'disregard[ing] the known or obvious consequence that a particular omission in their training program would cause [municipality] employees to violate citizens' constitutional rights.'" *Id.* (quoting *Flores v. County of Los Angeles*, 758 F.3d 1154, 1158-59 (9th Cir. 2014)). "Second, 'a violation of federal rights may be a highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recuring situations,' especially when there is a high likelihood 'that the situation will recur and the predictability that an officer lacking specific tools to handle that situation will

violate citizens' rights.'" *Id.* (quoting *Brown*, 520 U.S. at 409). "Third, the existence of a pattern of tortious conduct by inadequately trained employees may tend to show that the lack of proper training, rather than a one-time negligent administration of the program or factors peculiar to the officer involved in a particular incident, is the moving force behind the plaintiff's injury." *Id.* at *2 (simplified). If no constitutional violation occurred, a municipal liability claim necessarily fails. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (holding that a *Monell* claim cannot survive without an underlying constitutional violation).

### B.    Analysis

#### 1.    Fourth Amendment

Pearson appears to allege that he can hold Clackamas County liable for alleged violations of his Fourth Amendment rights because the nature of his arrest "strongly points to a reckless indifference from the sheriff down to the arresting officer." (FAC at 4.) In his response, Pearson argues that "the existence of a formal policy[,]" a persistent practice, and "[a] failure by policy makers to properly train" are applicable to this case. (*See* Pl.'s Resp. at 13.) Defendants move to dismiss Pearson's claim on the ground that "Plaintiff has not described facts that amount to a potential constitutional violation, but rather events that at best amount to a single incident of mere negligence." (Defs.' Mot. at 6.)

Pearson fails to identify or allege the existence of any formal policy, persistent practice, or policymakers' failure to train Clackamas County's law enforcement officers that was the "moving force" behind the alleged constitutional violations. Pearson appears to allege that the Clackamas County Sheriff's Office's policy of using canines during arrests is unconstitutional but acknowledges that "in most cases[, using canines] do[es] not result in such gross deliberate indifference to the constitutional rights on an individual nor such mortal grievous injury." (*Id.*) Pearson does not allege any facts supporting a reasonable inference that any Clackamas County

Sheriff's Office supervisor or official was deliberately indifferent in their alleged failure to train deputies. *See Barror*, 2023 WL 5350755, at *1 ("When inadequate training is the basis of a *Monell* claim, liability arises 'only where the failure to train amounts to deliberate indifference to the rights of persons with whom police come into contact.'" (quoting *Harris*, 489 U.S. at 388)).

Further, Pearson fails to identify any instances outside of his own where the Clackamas County Sheriff's Office's deputies' use of a canine allegedly constituted excessive force. Thus, the Court finds that Pearson has failed to allege facts supporting the existence of a policy or custom within Clackamas County of using excessive force through the use of police canines. *See Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) ("Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy.") (simplified); *cf. Barror*, 2023 WL 5350755, at *2 (granting summary judgment on the plaintiff's failure to train *Monell* claim based on "highly predictable consequences" because the "plaintiff does not provide (1) evidence of similar scenarios, (2) data or testimony on the number of [relevant] suspects that the [defendant]'s officers interact with, or (3) evidence that such training would actually reduce the risk of potential constitutional right violations"). Accordingly, the Court dismisses Pearson's Fourth Amendment *Monell* claim.

### 2.    Eighth Amendment

A threshold question in determining whether Pearson can establish *Monell* liability is whether a constitutional violation occurred. As discussed above, Pearson fails to allege facts supporting an Eighth Amendment claim upon which relief can be granted. Because Pearson fails adequately to plead an Eighth Amendment violation, Pearson's *Monell* claims fail as a matter of law. *See Heller*, 475 U.S. at 799 (holding that a *Monell* claim cannot survive without an underlying constitutional violation); *see also Lockett v. County of Los Angeles*, 977 F.3d 737,

741 (9th Cir. 2020) ("*Monell* claims thus require a plaintiff to show an underlying constitutional violation."); *Long v. City & Cnty. of Honolulu*, 511 F.3d 901, 907 (9th Cir. 2007) ("If no constitutional violation occurred, the municipality cannot be held liable[.]" (citing *Heller*, 475 U.S. at 799)); *Dickerson v. City of Portland*, No. 3:19-cv-01126-SB, 2020 WL 7391267, at *6 (D. Or. Dec. 16, 2020) (holding that because the "officers did not violate the Fourth Amendment when they arrested [the plaintiff,] . . . no constitutional violation occurred, [and the plaintiff]'s *Monell* claim fails as a matter of law" (citing *Heller*, 475 U.S. at 799)), *aff'd*, 2022 WL 824588 (9th Cir. Mar. 18, 2022).

In any event, the Court finds that Pearson fails to allege facts supporting the existence of a policy or pervasive practice relating to the Clackamas County Jail's holding or medical isolation cell practices that constitutes deliberate indifference to the AICs' constitutional rights. *See Wilkinson v. Centurion Med.*, No. 1:24-cv-00334, 2024 WL 3990726, at *3 (D. Idaho Aug. 29, 2024) ("Plaintiff's speculative allegations do not show that [the defendant] has a policy to delay medical treatment to inmates . . . . Plaintiff's own experience does not show a policy or custom. His own experience may have been caused by the mere or gross negligence of a scheduler or medical provider, or by the deliberate indifference of individuals, acting in the absence of a policy or custom."); *Ramsey v. City of Rancho Cordova*, No. 2:23-cv-02178, 2024 WL 2153648, at *3-4 (E.D. Cal. May 13, 2024) (dismissing the plaintiff's Eighth Amendment *Monell* claim because the "plaintiff's complaint only discuss[es] the incident that is the subject of this action, not other incidents"); *see also Lemire*, 726 F.3d at 1082 ("Mere indifference, negligence, . . . medical malpractice[, or e]ven gross negligence is insufficient to establish deliberate indifference to serious medical needs.") (simplified); *Hamby*, 821 F.3d at 1092 ("A

showing of medical malpractice or negligence is insufficient to establish a constitutional

deprivation under the Eighth Amendment.").

Accordingly, the Court dismisses Pearson's Eighth Amendment *Monell* claims.

## VI.    NEGLIGENCE

Pearson appears to assert supervisory negligence claims against an unnamed defendant

and Sheriff Brandenburg. (*See* FAC at 9, asserting claims against an unnamed Clackamas

County Jail "captain" and Sheriff Brandenburg for "gross negligence in allowing procedure and

protocol to become so lax [that] officers . . . acted with reckless negligence and irresponsibility";

*id.* at 12, "Along with [the arresting officers] in this suit is the Captain and Sheriff of Clackamas

County because the negligence and lax protocol must come from the top.") The Court interprets

Pearson's allegations as asserting a supervisory negligence claim against Sheriff Brandenburg

relating to the alleged excessive force, and a supervisory negligence claim against the unnamed

Clackamas County Jail "captain" relating to the allegedly inadequate medical care.

Defendants move to dismiss Pearson's negligence claim on the ground that it is

impermissibly based on the same facts as his Section 1983 claim. (*See* Defs.' Mot. at 9, citing

*Lifestyle Ventures, LLC v. County of Clackamas*, No. 3:15-cv-01291, 2016 WL 11394982, at *5

(D. Or. May 18, 2016).*) Defendants further argue that the Court should dismiss Pearson's

negligence claim because he "has not pleaded the essential elements" of his claim and fails to

plead compliance with the Oregon Tort Claims Act's ("OTCA") notice requirement. (*Id.* at 9,

citing OR. REV. STAT. § 30.275(7).)

### A.    Applicable Law

Under Oregon law, a plaintiff asserting a negligence claim must prove:

> (1) that defendant's conduct caused a foreseeable risk of harm, (2)
> that the risk is to an interest of a kind that the law protects against
> negligent invasion, (3) that defendant's conduct was unreasonable

in light of the risk, (4) that the conduct was a cause of plaintiff's harm, and (5) that plaintiff was within the class of persons and plaintiff's injury was within the general type of potential incidents and injuries that made defendant's conduct negligent.

*Son v. Ashland Cmty. Healthcare Servs.*, 244 P.3d 835, 841 (Or. Ct. App. 2010) (simplified).

"Under the OTCA, a party may bring a tort claim against a public body or an officer or employee of a public body, but the party must give advance notice of the party's intent to assert the claim[.]" *Moore v. Portland Pub. Schs.*, 537 P.3d 544, 551 (Or. Ct. App. 2023) (citing OR. REV. STAT. § 30.275(1)); *see also* OR. REV. STAT. § 30.275(1) (providing that "[n]o action arising from any act or omission of a public body or an officer, employee or agent of a public body . . . shall be maintained unless notice of claim is given as required by this section"). "For torts other than wrongful death, the party must give the public body notice of claim 'within 180 days after the alleged loss or injury.'" *Moore*, 537 P.3d at 551 (quoting OR. REV. STAT. § 30.275(2)(b)). "Failure to give timely notice of claim is fatal to a plaintiff's tort claim against a public body." *Denucci v. Henningsen*, 273 P.3d 148, 154 (Or. Ct. App. 2012) (citing OR. REV. STAT. § 30.275(1)).

Parties can satisfy the OTCA's notice requirement "several different ways, including by giving a formal notice of claim, and by '[c]ommencement of an action on the claim by or on behalf of the claimant within the applicable period of time provided in subsection (2)[.]'" *Moore*, 537 P.3d at 551 (first citing OR. REV. STAT. § 30.275(3)(a); and then quoting OR. REV. STAT. § 30.275(3)(c)). Oregon Revised Statute ("ORS") § 30.275(4) sets forth the "substantive requirements for a formal tort claims notice[.]" *Id.* Ultimately, a plaintiff bears the burden of pleading and proving that he satisfied the OTCA's requirements. *See Urb. Renewal Agency of City of Coos Bay v. Lackey*, 549 P.2d 657, 660 (Or. 1976) (explaining that "[t]he pleading and proof of notice sufficient to satisfy the requirements of ORS 30.275 is a mandatory requirement

and a condition [p]recedent to recovery under the [OTCA]") (citations omitted); *Moore*, 537 P.3d at 551 ("Plaintiffs bear 'the burden of proving that notice of claim was given as required.'" (quoting OR. REV. STAT. § 30.275(7))).

### B.    Analysis

As the Court has previously explained, courts in this district "recognize that while a party may not advance both negligence and constitutional claims based on the same operative facts at the summary judgment stage, a party *may* do so at the initial pleading stage." *Lifestyle Ventures, LLC*, 2016 WL 11394982, at *5 (collecting cases).

The Court, however, finds that Pearson has failed adequately to plead specific facts to support a negligence claim. Specifically, Pearson alleges no facts to establish that the deputies or jail staff were not properly trained in the relevant policies or that the unnamed "captain" or Sheriff Brandenburg knew or should have known their officers needed better training. *See Santiago v. City of Eugene*, No. 6:21-cv-01715-MK, 2024 WL 4008491, at *12 (D. Or. Aug. 19, 2024) ("To prevail at trial, Plaintiff would need to present some evidence that the City knew or should have known it needed to better train its officers on de-escalation and use of force policy." (citing *Whelan v. Albertson's, Inc.*, 879 P.2d 888, 892 (Or. Ct. App. 1994))), *findings and recommendation adopted*, 2024 WL 4770482 (D. Or. Nov. 13, 2024).

Further, the Court finds that Pearson fails adequately to plead facts supporting that he satisfied the OTCA's notice requirement. *See Hawkins v. City of Eugene*, No. 6:24-cv-00951-JR, 2024 WL 4574394, at *1 (D. Or. Oct. 2, 2024) (granting the defendant's motion to dismiss because the "plaintiff makes no mention of delivering formal or actual notice[ under the OTCA]"), *findings and recommendation adopted*, 2024 WL 4574384 (D. Or. Oct. 24, 2024). Accordingly, the Court dismisses Pearson's negligence claims.

///

## CONCLUSION

For the reasons stated, the Court GRANTS IN PART and DENIES IN PART Defendants' motions to dismiss (ECF Nos. 27, 28) as follows:

- DISMISS WITHOUT LEAVE TO AMEND

  o   Pearson's claims against the Clackamas County Sheriff's Office, the Clackamas County Jail, and "Clackamas County Jail Medical" Department; and

  o   Pearson's claims for damages against Sheriff Brandenburg in her official capacity as the Clackamas County Sheriff.

- DISMISS WITH LEAVE TO AMEND

  o   Pearson's Eighth Amendment claims;

  o   Pearson's Fourth Amendment supervisory and *Monell* claims; and

  o   Pearson's state law negligence claims.

The Court DENIES Defendants' motion to dismiss Pearson's Fourth Amendment claims against Gilmore and the two unnamed Clackamas County Sheriff's deputies. Pearson may file a second amended complaint by June 20, 2025. If Pearson does not file a second amended complaint by June 20, 2025, this case will proceed with his Fourth Amendment claims against Gilmore and the two unnamed Clackamas County Sheriff's deputies.

**IT IS SO ORDERED.**

DATED this 19th day of May, 2025.

*Stacie F. Beckerman*

HON. STACIE F. BECKERMAN
United States Magistrate Judge