IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| DAVID LLOYD PEARSON,<br><br>Plaintiff,<br><br>v.<br><br>CLACKAMAS COUNTY SHERIFF'S DEPT. *et al.*,<br><br>Defendants. | Case No. 3:24-cv-01017-SB<br><br>**FINDINGS AND RECOMMENDATION** |

**BECKERMAN, U.S. Magistrate Judge.**

Plaintiff David Lloyd Pearson ("Pearson"), now proceeding as a self-represented litigant, filed this case against Clackamas County (the "County"), individual Clackamas County Sheriff's Office ("CCSO") deputies, and NaphCare, Inc. ("NaphCare"). Pearson alleges constitutional claims for excessive force under 42 U.S.C. § 1983 ("Section 1983") against the individual officers and state law claims for medical negligence against the County and NaphCare.

Now before the Court is NaphCare's motion to dismiss Pearson's negligence claim for failure to state a claim. (NaphCare's Mot. Dismiss Pl.'s Third Am. Compl. ("Def.'s Mot. Dismiss"), ECF No. 65.) The Court has jurisdiction over Pearson's claims pursuant to 28 U.S.C.

§§ 1331 and 1367. For the following reasons, the Court recommends that the district judge deny NaphCare's motion to dismiss.

## BACKGROUND[1]

On June 21, 2023, CCSO deputies arrested Pearson as he was leaving a client's property where he was working as a handyman. (Third Am. Compl. ("TAC") ¶¶ 10-11, ECF No. 59.) Prior to his arrest, Pearson hid from the officers and they ordered Pearson to surrender. (*Id.* ¶ 12.) The officers located Pearson using a drone and eyewitness reports, and the officers commanded their police dog to pursue Pearson. (*Id.* ¶¶ 13-14.) The dog latched onto Pearson's left leg and the officers converged and restrained Pearson. (*Id.* ¶¶ 15-16.) The dog bite left Pearson with "massive injuries," including muscular damage to Pearson's medial thigh, shredding of Pearson's quadriceps, and blood loss. (*Id.* ¶¶ 16-17.)

An ambulance transported Pearson to a hospital where doctors performed surgery. (*Id.* ¶ 20.) Doctors removed shredded skin, subcutaneous tissue, and muscle from both the medial and lateral aspects of Pearson's left thigh. (*Id.*) After surgery, Pearson contracted a severe infection that extended his hospital stay. (*Id.* ¶ 21.)

When the hospital discharged Pearson on December 24, 2023, CCSO deputies arrived at the hospital and arrested Pearson. (*Id.* ¶ 22.) When Pearson arrived at the Clackamas County Jail ("CCJ"), officers confiscated Pearson's prescribed medications and wound care. (*Id.* ¶ 24.) During Pearson's first night in jail his leg continued to bleed and he experienced severe pain. (*Id.*) Pearson's cell was cold and NaphCare, CCJ's medical provider, did not provide Pearson with a blanket. (*Id.*) Pearson's cell contained what he perceived to be black mold and the

[1] The Court draws the facts in this background section from Pearson's complaint and must accept the alleged facts as true for the purpose of evaluating his claims at the pleading stage. *See Doe I v. Nestle USA, Inc.*, 766 F.3d 1013, 1016 n.1 (9th Cir. 2014) (citing *Seven Arts Filmed Ent. Ltd. v. Content Media Corp. PLC*, 733 F.3d 1251, 1254 (9th Cir. 2013))).

ventilation openings were covered with toilet paper. (*Id.*) NaphCare staff members offered Pearson only ibuprofen for pain relief. (*Id.*)

Pearson was left in "medical isolation" at CCJ for sixty-five days. (*Id.* ¶ 26.) While in isolation, numerous NaphCare staff members changed Pearson's bandages. (*Id.* ¶ 27.) Those staff members re-used gloves and improperly used a wound vacuum. (*Id.*)

On December 26, 2023, Dr. Jill Crum examined Peason and noted multiple puncture wounds with significant depth. (*Id.* ¶ 27.) At Pearson's first follow-up visit, a doctor ordered staff not to stuff cotton inside the open wound, but the staff members did not follow this instruction. (*Id.* ¶ 29.) On a subsequent follow-up visit, another staff member did not wear gloves while performing wound examination. (*Id.* ¶ 30.) On the following day, Pearson's wound began exhibiting signs of an infection, including heat, purulent discharge, and a foul odor. (*Id.*) In the following days, Pearson's symptoms gradually worsened to the point that he could no longer bend his knee due to severe swelling. (*Id.* ¶¶ 31-33.) On January 26, 2024, Nurse Taylor Rumelhart noted that Pearson's wounds continued to show signs of infection. (*Id.* ¶ 35.) On January 29, 2024, Nurse Practitioner Kristen Taub noted that Pearson's symptoms started to ameliorate and his swelling had improved. (*Id.* ¶ 36.)

During his stay in medical isolation at CCJ, Pearson received only ibuprofen and Tylenol for pain management even though he was discharged from the hospital with prescriptions for oxycodone and gabapentin and he continued to report extreme pain. (*Id.* ¶¶ 21, 29, 37-38.) In addition, medical staff did not offer Pearson any physical therapy during his stay at CCJ despite an obvious need for physical therapy to address muscle loss and gait abnormalities. (*Id.* ¶ 41.)

///

///

Pearson's injuries and negligent medical care have caused permanent deformities to his leg. (*Id.* ¶ 39.) Pearson has also experienced decreased muscle mass, persistent pain, and severe psychological trauma resulting from his injuries and negligent medical care. (*Id.* ¶¶ 39-42.)

## LEGAL STANDARDS

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell. Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Supreme Court has explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Although "[t]he plausibility standard is not akin to a 'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). Thus, "where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

## DISCUSSION

### I. MEDICAL NEGLIGENCE

Pearson alleges that NaphCare is liable for the negligence of its CCJ medical staff members who provided negligent medical care while Pearson was housed at CCJ. (*See* TAC ¶¶ 51-57.) NaphCare moves to dismiss Pearson's negligence claim on the ground that he has failed to allege facts to support a negligence claim against NaphCare based on vicarious liability.[2] (*See*

---

[2] NaphCare correctly notes that Pearson has not alleged that NaphCare was negligent in hiring, instructing, or supervising its staff (*see* Def.'s Mot. Dismiss at 5-6), and the Court agrees that Pearson does not appear to be asserting a claim for direct corporate liability. Further, the Court disregards any new facts and claims that Pearson asserts in his response (*see* Pl.'s Opp'n

Def.'s Mot. Dismiss at 5-7; NaphCare's Reply Supp. Mot. Dismiss Pl.'s Third Am. Compl. ("Def.'s Reply") at 3-4, ECF No. 80.)

### A. Applicable Law

"Under Oregon law, establishing medical negligence requires proof that (1) the defendant owed a duty to the plaintiff; (2) the defendant breached that duty; (3) the plaintiff suffered harm measurable in damages; and (4) there is a causal link between the breach and the harm." *Garcia v. United States*, No. 3:18-cv-00176-HZ, 2022 WL 1102595, at *5 (D. Or. Apr. 12, 2022) (citing *Zehr v. Haugen*, 871 P.2d 1006, 1010 (Or. 1994)).

"An employer is generally liable for an employee's tortious acts within the employee's scope of employment." *Doe v. Congregation of the Priests of the Sacred Heart, Inc.*, No. 6:22-cv-00309-MTK, 2024 WL 5186640, at *6 (D. Or. Dec. 20, 2024) (citing *Chesterman v. Barmon*, 753 P.2d 404, 406 (Or. 1988) (en banc)); *see also id.* ("In Oregon, an employee acts within the scope of employment when the act (1) occurs 'substantially within the time and space limits' of employment; (2) is 'motivated, at least partially, by a purpose to serve the employer;' and (3) is the kind of act 'which the employee was hired to perform.'") (citations omitted); *Tozer v. Katerra Constr. LLC*, 581 P.3d 530, 534 (Or. Ct. App. 2025) ("[T]he principal is liable for [an agent's] acts committed within the scope of employment." (citing *Vaughn v. First Transit, Inc.*, 206 P.3d 181, 187 (Or. 2009) (en banc)), *rev. denied*, 587 P.3d 347 (2026).

///

///

---

Def.'s Mot. Dismiss ("Pl.'s Opp'n") at 9, 12, ECF No. 79), because plaintiffs may not plead new facts or claims in response to a motion. *See Minor v. Fedex Off. & Print Servs., Inc.*, 182 F. Supp. 3d 966, 977 (N.D. Cal. 2016) (holding that a "[p]laintiff may not use his opposition to raise and argue new allegations or claims not in the complaint" (citing *Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998))).

## II. ANALYSIS

Pearson alleges that the County contracted with NaphCare to provide medical services at CCJ and that CCJ's medical staff, which included "a mix of agents of [the] County and NaphCare," breached the heightened and special duty of reasonable care they owed Pearson by failing to provide him with adequate medical care from December 24, 2023 through February 2024. (TAC ¶¶ 5, 22-41, 53-54.) Specifically, Pearson alleges a series of negligent actions taken by named and unnamed CCJ medical staff, including failing to supply him with his prescribed pain medications and antibiotics, reusing or failing to wear gloves, improperly using a wound vacuum, stuffing cotton inside an open wound in contravention of medical orders, and failing to order physical therapy. (*Id.* ¶¶ 25-41.)

NaphCare argues that Pearson has failed to allege a plausible vicarious liability claim because Pearson never names any specific individuals who were acting as NaphCare's agents nor alleges how any specific NaphCare staff member violated an applicable standard of care. (Def.'s Mot. at 5-7; Def.'s Reply at 3-4.) However, Pearson attributes several specific negligent actions to NaphCare staff members and Pearson is not required to name each of those staff members at the pleading stage. *See, e.g.*, *Smith v. NaphCare Inc.*, No. 3:22-cv-05069-DGE, 2023 WL 2477892, at *13 (W.D. Wash. Mar. 13, 2023) ("Reviewing the [complaint], the Court finds Plaintiffs have successfully pled a medical negligence claim. Two NaphCare mental health profession[al]s, Defendants John Doe 6 and John Doe 7, allegedly met with [the plaintiff] but failed to intervene or provide treatment despite knowing [the plaintiff's] health was rapidly worsening. Plaintiffs further allege these NaphCare employees 'failed to exercise reasonable care in their provision of [the plaintiff's] health, welfare, and safety which caused Plaintiffs' injuries.' . . . NaphCare's motion to dismiss is DENIED as to Plaintiffs' medical negligence claim.") (simplified); *see also* *Hartsfield v. City of San Diego*, No. 3:25-cv-01950-WQH-DEB, 2026 WL

836592, at *22 (S.D. Cal. Mar. 26, 2026) ("The Court concludes that Plaintiff sufficiently alleges that the County is vicariously liable for Does 13-14's negligence.").

Further, Pearson alleges that CCJ staff members violated applicable standards of care by failing to supply him with his prescribed pain medications and antibiotics, reusing or failing to wear gloves, improperly using a wound vacuum, stuffing cotton inside an open wound in contravention of medical orders, and failing to order appropriate physical therapy. (TAC ¶¶ 25-41, 54.) Pearson also alleges that these violations of the standard of care caused his injuries. (*Id.* ¶¶ 39-42, 55.)

The Court finds that Pearson has stated a negligence claim against NaphCare based on vicarious liability for the actions of its staff members and recommends that the district judge deny NaphCare's motion to dismiss.[3] *See Est. of Bartolacci by & through Bartolacci v. County of San Diego*, No. 3:24-cv-1156-WQH-JLB, 2026 WL 376387, at *37 (S.D. Cal. Feb. 10, 2026) (denying NaphCare's motion to dismiss the plaintiff's medical negligence claims, rejecting its argument that the complaint "fails to allege that specific conduct by either [a NaphCare employee] or NaphCare breached a legal duty, or that the breach caused [the plaintiff]'s injury[,]" and finding that "Plaintiff sufficiently alleges that NaphCare is vicariously liable for [its employee's] negligence") (citation omitted); *Hogue v. Yordy*, No. 3:17-cv-00085-BLW, 2018 WL 11462290, at *6 (D. Idaho Apr. 16, 2018) ("Plaintiff also alleges that Corizon is vicariously liable under a respondeat superior theory for the negligence of its employees. Plaintiff may proceed on such a state law cause of action to the extent that the claim is dependent upon a

[3] The Court disregards Pearson's request in his response to order NaphCare to produce "full discovery" (Pl.'s Opp'n at 11), because it is Pearson's obligation to serve discovery requests on NaphCare and he may move to compel further discovery responses only if NaphCare's responses are deficient.

showing that the employees or agents [providing medical care at a state prison] were negligent.") (citation omitted); *cf. Simms-Belaire v. Washington County*, No. 3:20-cv-338-SI, 2024 WL 279020, at *20 (D. Or. Jan. 25, 2024) (denying NaphCare's motion for summary judgment on the plaintiff's medical negligence claim where the plaintiff "allege[d] that the agents and employees of NaphCare and [Washington] County were negligent by failing to . . . appropriately treat his ankle injury").

## CONCLUSION

For the reasons stated, the Court recommends that the district judge DENY NaphCare's motion to dismiss (ECF No. 65).

## SCHEDULING ORDER

The Court will refer its Findings and Recommendation to a district judge. Objections, if any, are due within fourteen (14) days from service of the Findings and Recommendation. If no objections are filed, the Findings and Recommendation will go under advisement on that date. If objections are filed, a response is due within fourteen (14) days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 20th day of July, 2026.

Stacie F. Beckerman

HON. STACIE F. BECKERMAN
United States Magistrate Judge